Good morning, Your Honors. Steve Rumage this morning for Defendant and Appellant T-Mobile USA. And I realize I have to manage my own clock, but I'd like to reserve three minutes if I could for rebuttal. As Your Honors know, we're here this morning seeking enforcement of a consumer arbitration agreement, which is a topic that has generated a lot of judicial attention in recent years. And indeed, since the parties completed their briefing, there have been further developments in this area, most notably with the Washington Supreme Court's decision in Scott v. Singular Wireless, which both parties addressed in their Rule 28 letter. And this case actually presents the first opportunity for this Court, and really for any Court, to address Scott and federal preemption issues as they pertain to Scott. So with that in mind, what I'd like to do in the time I have this morning is address three things. First, I want to very briefly talk about two of the District Court's grounds for finding this agreement unconscionable. Those are the punitive damage waiver and the fee issues, because I want to take those off the table relatively quickly because I don't believe they should be the subject of too much controversy. And then I want to turn to what I think is the central issue on this appeal, which is the Scott issue and the question of whether Scott is controlling or whether the FAA preempts it. We believe the FAA preempts it. And finally, I want to briefly address the question that the Court addressed to the parties in the So first, let's talk about two of Judge Peckman's three grounds for finding this unconscionable. Those are the punitive damages limitation and the question of attorneys' fees. As we explain in our briefs, we believe the agreements should be read not even to raise issues on these two points. We believe that the agreements do permit the award of damages, the treble damages permitted by the Washington Consumer Protection Act, and we believe they do permit the award of attorneys' fees to prevailing parties. And we've explained why the agreements should be read that way. And at some level, one would think that would end it because that obviates what is the supposed unconscionability of the agreement. But even if it doesn't, controlling precedent from the U.S. Supreme Court makes clear that that ambiguity as to what the agreement requires on those two points is a question for the arbitrator, not a question for the district court in the first instance. And that's the Pacificare case in which Section 8-1 Supreme Court, speaking through Justice Scalia, dealt with a situation where the arbitration clause forbade the award of punitive damages or any of what they called extra-contractual damages. The plaintiffs sued under RICO, and they said, lookit, we can't be held to that clause and that limitation of liability because if we were, we wouldn't get remedies that RICO provides. And, indeed, the court of appeals refused to enforce the arbitration clause, saying, and I quote, it prevented meaningful relief, close quote, under RICO. And what Justice Scalia said in rejecting that was this. We should not, on the basis of mere speculation that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability in doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved. The proper course is to compel arbitration. In other words, the core of the remedies under RICO. And so, too, Your Honor, as we explain in the briefs. Then, presumably, if the arbitrator decides in a way that's, might be hostile, it has to be raised in some sort of an attempt to resist enforcement of the arbitration? Your Honor had exactly the question that I read when, or that I had when I read the opinion. And I don't believe that there's a clear answer, certainly on the face of I think the reality is that in a lot of cases, and I would assume this was true in Pacific Care, that matter simply shakes itself out in arbitration, and it does not find its way into the reported decisions on enforcement. But the import of it is clear, and it's predicated not just on Pacific Care, but Justice Scalia rested on prior cases involving the Carriage of Goods at Sea Act and questions of whether arbitration clauses could limit liability under that. And again, saying that even under those cases, you had to submit that issue as an antecedent matter to the arbitrator. So, with those two, and by the way, before I move on to the central issue of Scott, I think it's fair to say that even under the Washington Supreme Court's analysis in the Adler case, which predates Scott, it's clear that even if these issues really were properly before the district court, the appropriate course was simply to sever them and to enforce the arbitration clause as written. Adler did exactly that with an attorney's fee clause not dissimilar to the one at issue here. So we think those issues really should have been off the table. And we believe we can turn safely to Scott and what we think is the core issue, which is the commitment in this arbitration agreement to individual arbitration to the exclusion of class action procedures. And we believe that Scott's rejection of that approach is preempted by the FAA. Now, before I turn to Scott, I want to lay the groundwork by putting this in context and talking about three basic principles under the FAA that I think Mr. Breskin and I can both agree upon and hopefully the Court can, too. The first premise is that the FAA in Section 4 mandates the enforcement of arbitration clauses as written. What it actually says is that arbitration shall be compelled, and I quote Section 4, in the manner provided for in the party's agreement. In the Volt case, the Supreme Court quoted that language and says it means what it says. And in Volt, that meant that you enforce not just the arbitration clause, but its choice of law provision as well. It meant in Pacific here that you enforce the limitations on damages that the parties agreed to. In Bradley, a case from this Court, it meant that you enforced a forum selection clause. And in Ting, actually, the Court, this means for individual arbitration. So as a general principle, they must be enforced as written with all of the procedures the parties have agreed to. But the second principle we also agree on is that they can be invalidated. And what the statute says is they can be invalidated on such grounds as exist at law or in equity for the revocation of any contract. And what this Court has made clear, following up on the Supreme Court's decision in Southland Court v. Keating, is that means you can't invalidate an arbitration provision or some procedure within it based upon a principle of law that only applies to some types of contracts, like consumer contracts or like franchise contracts. And the cases from this Court and from the Supreme Court make that clear as well. And finally, as a general principle, we know that states cannot just decide that arbitration isn't good enough for certain types of disputes. In Perry v. Thomas, the Supreme Court speaking through Justice Marshall said you can't do that. The Supremacy Clause says you can't carve out a particular type of dispute and say that's got to go to court. And indeed, what Justice Marshall made clear in Perry was that these principles apply not just to legislative actions, but judicial actions taken by states. So it doesn't matter whether it's judge-made common law or whether it is legislative law from the state legislature. So those are the general principles. So it seems to me that our task when we turn to Scott is to figure out where in those general principles Scott falls. Is it more like a case like Bradley or Perry v. Thomas, where a state is carving out a particular area and saying arbitration can't go there, or is it the application of a general principle of unconscionability, which is, of course, what the plaintiffs argue in Scott and what, indeed, the Supreme Court of Washington said. But we submit that this case falls closer to the Bradley and Perry case, which is the Bradley and Perry paradigm. It is not a faithful and principled application of unconscionability law, and we know that for at least three reasons. Three is all I have time to talk about. But we know it for at least three reasons. First, the case doesn't speak in traditional unconscionability terms. What's telling about Scott is it doesn't even cite traditional unconscionability cases in Washington. It does not speak in terms of the traditional tests of unconscionability. One could take out the word unconscionability or unconscionable from that opinion, and it wouldn't look materially different because it's not about traditional notions of unconscionability. It's about public policy, as I'll get to in a moment. Second, we know it's not about general unconscionability principles because it doesn't measure unconscionability at the time the parties contract. Traditionally, unconscionability is about the circumstances between the parties to a bargain overreaching that puts one party at a significant disadvantage. But here, here's what the Washington Supreme Court says makes a contract unconscionable. Where many customers of the same company have the same or similar complaint, and each is damaged a small amount, under such circumstances, the class action waiver is substantively unconscionable. So all of a sudden, unconscionability isn't about the bargain between the parties. It's about the claims. It's about whether the claims are good enough to be handled in arbitration or whether they need a court or at least class actions. That's never been unconscionability law in Washington. And third, the court justifies its opinion not by reference to the bargaining position of the parties, but by reference to an overarching public purpose. And it's best to start with how they even frame the issue. Here's how they frame their unconscionability question. We turn to whether this class action waiver is unconscionable or whether it undermines Washington's CPA to the extent that it is injurious to the public. That's not a determination that as between these parties to the bargain, there was overreaching or there was disagreement. Well, the court also goes on to say, though, in another part of the opinion, that any time a clause unilaterally and severely limits remedies, that that's sort of speaking in traditional bargaining kinds of terms. That's absolutely right, Your Honor. And you know what's fascinating is one cannot find a Washington unconscionability case predicated on that notion. Well, they cite a bunch, and I didn't actually go back and read the underlying cases, but they do cite – Adler, Zuber, the only cases they cite are arbitration cases. So this is a doctrine that they have created not as an evolution of unconscionability law, but to single out arbitration clauses for special treatment under Washington law. And here's the best way to analogize, I think, in sharp terms to clarify the issue. If the Washington legislature took the words that the court used in Scott and wrote a statute, put it in RCW 1986, which is the Consumer Protection Act, and made it read like this, the legislature finds that any class action waiver undermines the Consumer Protection Act. For that reason, and that's, by the way, that's a phrase out of that framing of the issue, and then here's a phrase out of how they conclude. For that reason, where many customers of the same company are alleged to have the same or similar complaint and to be damaged a small amount, any agreement to litigate or arbitrate such Consumer Protection Act claims on an individual basis shall be unenforceable. Well, I submit that this Court would strike that statute down as inconsistent with the FAA in a heartbeat. It is no different from the Consumer Legal Remedies Act provisions that this Court in Ting found could not be enforced by the FAA. One problem is that I suppose Washington can adopt a public policy that at least theoretically applies to any contract, but then it turns out that only arbitration agreements violate it. Does that mean that somehow they're legislating just against arbitration agreements, or are they legislating against a general evil that only arbitration contracts indulge in? I would say, Your Honor, that if such an event occurred, and I'm not going to concede for a moment necessarily that it did occur here, but I would say that if such an event occurred that this Court ought to look very, very closely at what that doctrine does. And the reason I say that is that the FAA was passed in 1925 principally because historically there had been a hostility of courts and legislatures to the And as a result, when one sees a statute or a, quote, general principle such as Your Honor has described, I think one needs to very carefully think about whether it's a wolf in sheep's clothing. And I think that is exactly what the Scott decision is, because when one boils it down, what Scott really says is, and I think they're almost blatant in saying this, what Scott really says is individual arbitration, this particular form of agreement that federal law protects, isn't good enough to effectuate a state policy. And time and again, the Supreme Court has said, you know, we're sympathetic to that, but state policy can't override the federal statute. Perry v. Thomas brings that home, because California had a state policy that said, you know, gee whiz, wage claims, employees, they're poor and they're oppressed and they need to be able to go to court. Supreme Court, Perry v. Thomas said, no, you can't do that. In California, in Ting v. AT&T, there's two parts to that opinion, one of which is very rarely cited and thought about. But in one part of that opinion, the one that's very rarely cited, that this Court looked at the Consumer Legal Remedies Act and the provisions that generally barred arbitration provisions, or I should say, barred the waiver of any provisions under the Consumer Legal Remedies Act, which included class actions. And this Court said, you know, we can't do that. That bar, that bar is preempted by the FAA. So if a legislature can't do that, neither can a court. And so if a court appears to be doing that, even though they may dress what they're doing up in language of general application, I believe the Court needs to look very closely. And I think if the Court looks closely at Scott, it will conclude that it is a wolf in sheep's clothing and the FAA preempts it. Are you going to address Schroer? I will, if Your Honor would like me to. I'd be interested. And it seems to me Schroer is interesting because it's really a three-part opinion. The first part talks about, under California law, is this unconscionable? The second part talks about what I would regard as direct preemption, express preemption. And the third part talks about implied preemption. Well, on the first part, California law really doesn't – isn't germane to this case, because that's all about Discover Bank and what it means. What matters here is what Scott says and what Scott means. The second part of Schroer talks about whether Discover Bank is preempted under the FAA. And I think it's important to note that what the Court says in Schroer about Discover Bank is this. It says that it is a refinement of the unconscionability analysis applicable to contracts generally in California. Now, I happen to disagree with that. But even if that statement is true, it does not tell us anything about whether Scott is a refinement of general unconscionability analysis. And for the reasons that I've explained a moment ago, I don't think it is. I see that I've now run over my time. I haven't addressed the Court's question on standing, and I'm happy to do that if the Court would like me to. Why don't you spend – yes, I'd like you to go ahead and do that. Mr. Lubbidge and to the other side of it. Okay. It's an important case.  The question that was proposed was whether Ms. Loudon has standing to pursue her claims. And taking that at face value, that strikes to me – it strikes me as being a question that is peculiarly for the arbitrator. And the second part of the Court's question was, and do we need to resolve that question? And so I would answer the second part of the question as, no, you don't need to resolve it. And the reason I say that is this. Again, when you look at the Supreme Court opinions, and I think particularly of Pacific here, they make clear that everything that's not about arbitrability goes to the arbitrator. Well, let's assume that we don't agree with you on that main point. On the main point? Everything that isn't about arbitrability goes to the arbitrator? No. Let's assume that we disagree with your main argument in the case. Yes. And we were to uphold the main part of the ruling that this case belongs in court. Under that assumption, could you address standing not from the point of view of what goes to an arbitrator, but under normal Article III principles? Okay. And you just answered, actually, one of the questions I had about the Court's inquiry. It seems to me under normal Article III principles, the question is, do we have a case in controversy? And it seems to me that that is answered in large measure by the fact that we have Mr. Mahowald before the Court, who clearly is a party to an agreement and clearly is asserting claims. And so the controversy as a whole is clearly before the Court. And if he were a proper class representative, then it wouldn't make any difference whether she's before the Court. Exactly right. And, Your Honor, Your Honor has leaped ahead to the class representative situation and the question of class certification, which is how Judge Pechman looked at it as well. But it seems to me that it is really antecedent to that. And I suspect that there would be motion practice, if this Court remands it to the district court for proceeding in accordance with its opinion, that we would probably have motion practice as to whether she can proceed at all antecedent to the question of whether she can be a class representative, because it seems to me those are two different questions. But he has Article III standing. I think that's clear, Your Honor. Thank you very much, Your Honor. And we'll give you some time for rebuttal as well. I appreciate that, Your Honor. If it please the Court, I'm David Breskin. I represent the plaintiffs in this case. I must say that in preparing for the argument today, most of the thunder, I would say, has already been taken away by the Court's decision in Schroer and the Washington Supreme Court's decision in Scott. It seems quite clear they're dispositive of the issue on the arbitration clause. I disagree with my learned colleague that those cases are not dispositive. I can see why he didn't want to talk about Schroer. The Washington Supreme Court's rationale for why class action waivers are unconscionable under Washington law is expressed in the same terms as literally the other ten cases that are cited in Schroer for the same proposition. Class action waivers are substantively unconscionable. Three of those prior cases deal with T-Mobile. The other cases they cite, the other seven deal with other cell phone companies that have identical provisions. This is the reasoning of the Washington Court in Scott. It says, as we held above, contracts that effectively exculpate their drafter from liability under the CPA for broad categories of liability are not enforceable in Washington, even if they are embedded in an arbitration clause. The arbitration clause is irrelevant to the unconscionability. That was the exact same rationale that the California Supreme Court reached in the Discover Bank case in finding class action waivers unconscionable, as did all the other cases that are cited, of those ten that are cited in the Schroer decision, and again, three of which deal with T-Mobile itself. Schroer deals directly with the issue of FAA preemption and decides that very issue against the cell phone company in that case. The Washington Supreme Court made clear that it was not singling out arbitration provisions. It goes on to state class action waivers have very little to do with causes of action. Limited categories of damages or otherwise strip away a party's right to vindicate a wrong do not change their character merely because they are found within a clause labeled arbitration. Indeed, that makes perfect sense. If a company such as T-Mobile can label a provision arbitration and put all manner of unconscionable provisions in it, usurous interest rates, late fees that exceed any bounds of actual administrative costs to them, and amount to nothing more than an illegal penalty, just by labeling it arbitration, there's no end to what they could do that they would claim FAA preemption over. That clearly cannot be the law, and it's clearly the case that the Scott decision is consistent, as I've said with prior precedents as cited in Schroer. I don't know if you have any questions for me on those, on the fundamental issue. I have just sort of a practical question, and that is that I think all the briefs were written before Scott and before Schroer. Yes. So my practical question is, would it be helpful to you and to Mr. Rumage if we issued an order that permitted each to file a supplemental brief on those two cases, because the 28-J process, you know, the letters we get, have their constraints. They're not the same as a brief. Well, let me answer it this way. I guess the short answer is no, because due respect to my learning counsel, I think he put everything in that letter that he would otherwise put in such a brief and explored those issues quite well that he wanted to advance. And at the end of the day, I think Schroer answers all the questions on FAA preemption. So, no, Your Honor. I'd like to ask you about standing. Is your view the same as opposing counsel's? That is, because one of the plaintiffs clearly has Article III standing, we don't really need to be concerned with whether all of them do, whether both of them do? Well, if I could take that as a two-part. I agree that it's clear that Mr. Amalwal has standing, and I agree that the case could not be dismissed based on standing. However, I take a little bit of a divergence on his view about whether you can decide the issue as a matter of law here. And I say that because it's quite clear, as you heard in his response, the issue of standing arises from a contention that Ms. Loudon was not a party to the actual agreement. But they've waived that. They've waived that argument. They've waived that position. They have affirmatively asserted to this Court that she was a party to the contract. They say it repeatedly in their brief. I'd like to read parts of that where they affirmatively assert that very contention. For example, in their reply, they say at page 2, as T-Mobile explained in its opening brief, the arbitration agreements signed by plaintiffs, meaning both, do not, as a practical matter, insulate T-Mobile from liability, they say in their first footnote. Although Loudon, Ms. Loudon's agreement does not contain a similar provision having to do with attorney's fees, T-Mobile will pay the fees. They go on and identify the Loudon agreement by ER number 110. They cite the provisions of it. They note the difference between her agreement and that of Mr. Malwall in a couple of significant respects, including the attorney's fee provision. Then they go on and make the various assertions with regard to Ms. Loudon's actual knowledge of the arbitration provision, which they relied on in the district court's finding that there was not procedural unconscionability. They state, for example, that Ms. Loudon received the T-Mobile service agreement at page 19. Moreover, plaintiffs, including Ms. Loudon, do not present any evidence that they lacked actual notice of or were surprised by their arbitration obligations. So it seems to me that a party such as we have here that repeatedly used those very arguments and the district court agreed. In fact, the district court's order on procedural unconscionability states that the plaintiffs, well, to use the term they, had as much time as they wanted to consider the agreements before signing them. Now, I don't believe they can come in and now say that Ms. Loudon is not a party to the agreement, did not have an opportunity to review the agreement, did not sign the agreement, or make such contrary representations to the court, even if that were not the case, even if that were not the case. What is the case is that Ms. Loudon and her then-husband, Mr. Miller, signed up for service. She was part of a family and friends plan. And clearly, just because the marriage ended and now Ms. Loudon is Ms. Loudon again, she clearly has standing to pursue a claim, both in terms of the CPA and we have the Stevens v. Omni Insurance Company case on that point. She would not have to be the direct contracting party, but clearly she had injury because the marital assets were used to pay the bill. And she would be entitled to at least get her portion of the marital assets back. I guess the sum of it is, if this court were to consider standing of Ms. Loudon, it's clear that she has standing. They've waived the argument she doesn't have a contract claim. They've waived the argument that she's not a proper party. And the Washington courts have made clear that she has a CPA claim, even if she didn't have a direct contractual relationship. And she clearly can establish injury and damage because she has a right to recover her share of the communal assets, the marital assets that were used to pay those bills. Did I answer anything else? No. Is there room for argument that California's unconscionability as applied in the California case is broader than the Washington one that's applied in Scott? In other words, I believe your opponent's saying that Scott is a targeted doctrine of unconscionability. It aims just at arbitration agreements. As opposed to the California statute? As opposed to the California one, which, I mean, there were cases there involving credit cards and lots of other things that still had arbitration clauses. The general provision that was applied in Discover Bank was a statutory provision making it unconscionable for a party to attempt to exculpate themselves through a contract for their liability. Which, as I read, that's the exact same rule of law that the Washington Supreme Court is applying, albeit that's a common law rule in Washington as opposed to a statute. But it's the same rule. It's the same rationale. So I don't think there's really any distinction between the two. Did I unassure you? Did I hit your point? I just wanted your position. I presume maybe we'll hear from the other side. Thank you. Thank you. We'll give you three more minutes, and we'll probably use more than that if you need them. Thank you, Your Honor. I just had three very brief points in response to Mr. Breskin's comments. First of all, in response to Judge Gould's question about whether it would be helpful to have supplemental briefing. Notwithstanding what Mr. Breskin said, I would respectfully submit that I struggled to get what I wanted to say in that two-page Rule 28 letter. And there is much, I think, more to be said about Scott and what Scott means. And so certainly, if the Court were so inclined, we would welcome the opportunity to share our views at much greater length. Second, with respect to the substance of Mr. Breskin's argument, for the most part, he said, Schroer controls, Scott controls, without engaging on the substance of what we were talking about. As to the question about Schroer, since I briefly addressed that in response to Judge Canby's question, it seems to me that one has to read Schroer in context, which is, it is asking whether the California rule is incompatible with the FAA. And again, we disagree with how Schroer came out. But one thing that I think we all can agree on is it talked about California law. And California law is not just Discover Bank, just as Washington law is not just Scott. It is all that goes before. And Your Honor's question was, well, gee whiz, couldn't a court or a state adopt a rule to combat a broad evil and just have it apply by happenstance to arbitration clauses? Possibly. And to understand whether that's really what's going on here, one must understand not just where we are today, but how we got there. And Schroer talks about how we got there in Discover Bank. And it surely does not talk about how we got to Scott. And I think that's the important context that's missing in trying to understand whether Washington has erected the kind of arbitration hostile rule that the FAA forbids. Or whether they have also erected a rule that is applicable not to any contract, but to a particular type of contract, a consumer contract, something that this court in Ting said you can't do. The third point I would make, Your Honors, is that Mr. Breskin's concerns about wireless carriers gone wild is a misplaced concern. The reality is that, first of all, people do have incentive to bring CPA claims and arbitration, and they do. The reality is that if there is the kind of widespread exploitation that Mr. Breskin describes, we have attorneys general. And the Attorney General, indeed, of Washington for roughly ten years was the only person with authority to bring actions under the Consumer Protection Act.  And so there's no reason to believe that that kind of widespread fraud that he describes would go without remedy. And finally, as to standing, the claim that we've waived it, you know, the fact that we may have referred in shorthand terms to these parties as plaintiffs from time to time does not undo the fact that we've pled it as an affirmative defense, and we have preserved it in every brief, including in footnote one to our first brief to this court. So that is a live issue that will need to be addressed by whoever is the appropriate forum. We appreciate the court's time. Thank you. Thank you, counsel. The case just argued is submitted. We appreciate it.
judges: Canby, Graber, Gould